**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 12, 2021**

# In the Court of Appeals of Georgia

A21A0250. DAVIDSON v. LINDFIELD HOLDINGS, LLC.

MERCIER, Judge.

Lindfield Holdings, LLC ("Lindfield), filed a quiet title action against William Davidson, seeking to set aside and cancel a warranty deed that allegedly conveyed property located in Snellville, Georgia ("the Snellville property") to Davidson. The case was submitted to a special master, who recommended that the trial court cancel the deed and quiet title in Lindfield. The trial court adopted the special master's findings and recommendation, cancelled the deed, quieted title in Lindfield, and dismissed Davidson's counter and third-party claims as moot. Davidson appeals the denial of his motion for new trial. For reasons that follow, we affirm in part, reverse in part, and remand the case for further proceedings.

Viewed favorably to the special master's findings, as adopted by the trial court, see *CB Lending v. Strategic Property Consulting Group*, 353 Ga. App. 114 (834 SE2d 618) (2019), the record shows that Davidson owned the Snellville property until 2010, when his lender foreclosed on the property. Davidson was friends with Damon and Janice Barner, who owned and operated Lindfield, a limited liability corporation that they used to manage their rental real estate business. At Davidson's urging, the Barners bought the Snellville property from the lender in 2011 and placed it in Lindfield's name, financing the purchase through a deed to secure debt signed by Janice. The Barners made all payments required by the security deed, which was released in 2014. They also paid the taxes and insurance fees relating to the property.

Around 2012, Davidson began working for Lindfield, performing "odds and ends" such as collecting rents at Lindfield's rental properties, handling paperwork, and interacting with county code enforcement personnel. The Barners also made him a manager of Lindfield, authorizing him to sign deeds on certain real estate transactions. In 2015, however, the Barners' relationship with Davidson began to sour, and Damon sought to "get [Davidson] out of [their] affairs." By November 2015, the Barners had withdrawn any authority that Davidson previously had to sign documents on behalf of Lindfield.

The Barners testified that Davidson did not pay for the Snellville property, was not authorized to transfer it, and never held the position of "President" with Lindfield. But in May 2016, Damon discovered that Davidson, acting as President of Lindfield, had executed a warranty deed on January 19, 2016, purporting to transfer the Snellville property from Lindfield to himself. Lindfield petitioned to cancel the warranty deed through an action to quiet title. Davidson answered and asserted claims against Lindfield and various third-party defendants (including the Barners and several other corporate entities) for fraud, to enforce an agreement, slander of title, and declaratory relief.

The trial court referred the case to a special master pursuant to OCGA § 23-3-43. Following an evidentiary hearing, the special master concluded that Davidson lacked authority to execute the January 2016 warranty deed, rendering it invalid. The special master thus recommended that the trial court cancel the deed and quiet title in Lindfield. The trial court adopted the special master's recommendations and dismissed Davidson's counterclaims and third-party claims as moot. This appeal followed.

1. Davidson first argues that he was entitled to a default judgment against the third-party defendants he brought into the lawsuit because these parties failed to file

a timely answer to his third-party complaint. Generally, a defendant must serve an answer within 30 days of service of the complaint. See OCGA § 9-11-12 (a). If a defendant fails to answer within the required time, the case against that defendant "shall automatically become in default[.]" OCGA § 9-11-55 (a). The default, however, "may be opened as a matter of right by the filing of . . . defenses within 15 days of the day of default, upon the payment of costs." Id.

Davidson does not dispute that the third-party defendants filed a joint answer within the 15-day grace period for opening default under OCGA § 9-11-55 (a). Rather, he claims that they failed to pay the "costs" required by the statute. It is true that "[f]ull payment of costs is a condition precedent to opening a default." *Hazzard v. Phillips*, 249 Ga. 24, 25 (1) (287 SE2d 191) (1982). But the trial court is "the arbiter in case of dispute as to whether or not the costs [have] been paid." *Whitsett v. Hester-Bowman Enterprises*, 94 Ga. App. 78, 80 (1) (93 SE2d 788) (1956). And in this case, the trial court determined that the third-party defendants satisfied the costs requirement. Although Davidson suggests that only one of the third-party defendants actually paid costs for opening default, he has not demonstrated that any costs relating to the default remain unpaid or that the trial court erred in determining that sufficient

4

payment was made under OCGA § 9-11-55 (a). Accordingly, this claim of error presents no basis for reversal.

2. Next, Davidson argues that the trial court erred in setting aside the 2016 warranty deed and quieting title to the Snellville property in Lindfield. As noted above, the trial court adopted the report and recommendation of the special master, who determined that Davidson lacked authority to sign the deed and transfer the property to himself. When a trial court adopts the findings of a special master in a quiet title action, those findings will be upheld on appeal absent clear error. See *DeCay v. Houston*, 295 Ga. 223, 224 (1) (758 SE2d 286) (2014). In other words, "if there is any evidence supporting the judgment of the trial court, it will not be disturbed." Id. (citation and punctuation omitted).

We find no clear error here. Under Georgia law, "[a]n instrument which, by itself or in connection with proof of possession by a former occupant or other extrinsic facts, gives the claimant thereunder an apparent right in or to the property may constitute a cloud on the title of the true owner[.]" OCGA § 23-3-42. To remove such cloud, the property owner may file an action to quiet title, which is an equitable proceeding used to cancel an "iniquitous deed or other writing which . . . either casts a cloud over the complainant's title or otherwise subjects him to future liability or

5

present annoyance, and the cancellation of which is necessary to his perfect protection." OCGA § 23-3-40.

The special master concluded that Davidson lacked authority to sign the 2016 warranty deed that conveyed the property from Lindfield to himself. Sufficient evidence supports this conclusion. The Barners testified that Davidson was not authorized to sign the deed on behalf of Lindfield in January 2016 and that, despite what Davidson indicated on the deed, he was not the "President" of Lindfield. Moreover, a Lindfield operating agreement executed in November 2015 designated Damon and his son as equal members, and Janice as the chief executive manager of the corporation. Janice testified that Davidson had no involvement in Lindfield after that point.

On appeal, Davidson argues that he had previously signed deeds conveying Lindfield properties, including while acting as "President." But even if he had taken such action in the past, Lindfield offered evidence that by November 2015, Davidson no longer had the requisite authority to sign deeds for Lindfield. This evidence supports a finding that Davidson improperly transferred Lindfield's interest in the Snellville property to himself through a "false and fraudulent assumption of authority." *Deutsche Bank Nat. Trust Co. v. JP Morgan Chase Bank, N.A.*, 307 Ga.

6

App. 307, 313 (2) (704 SE2d 823) (2010) (citation and punctuation omitted). The trial court, therefore, did not err in setting aside the January 2016 deed and quieting title in Lindfield. See OCGA §§ 23-3-40, 23-3-42; see generally *Patel v. Patel*, 342 Ga. App. 81, 90 (2) (a) (ii) (802 SE2d 871) (2017) (conventional quiet title action alleged that defective and/or fraudulent deeds held by defendant created a cloud of title on claimants' property).

3. Davidson also challenges the special master's alternative conclusion that, even if the parties *had* agreed that Davidson could transfer the Snellville property to himself, the agreement was not reduced to writing and thus was unenforceable under the Statute of Frauds. See OCGA § 13-5-30 (a) (4) (To be enforceable, "[a]ny contract for sale of lands, or any interest in, or concerning lands" must "be in writing and signed by the party to be charged therewith or some person lawfully authorized by him or her[.]"). Again, however, the evidence supports the special master's determination that Davidson executed the 2016 deed without authority. We need not consider whether the special master's alternative finding was correct. See *Wallis v. Porter*, 290 Ga. 218, 220 (2) (719 SE2d 419) (2011).

4. Davidson argues that the trial court erred in dismissing his counter and third-party claims as moot. A review of those claims shows that several are, in fact, moot.

7

Specifically, Davidson's two requests for declaratory relief and his slander of title claim are based on his assertion that he owns the Snellville property pursuant to the 2016 deed, an assertion rejected by the special master. Because the special master's findings, which were adopted by the trial court, render these title-based claims moot, the trial court property dismissed them. See generally *Psalm 23 Project v. H. J., Russell & Co.*, 304 Ga. App. 886, 889 (1) (a) (698 SE2d 379) (2010).

The special master's determination, however, did *not* resolve Davidson's fraud claim, which also includes an unjust enrichment allegation. This claim does not focus on the current title-holder to the property. Instead, it alleges that Lindfield and others induced Davidson to perform work for Lindfield, but refused to pay him in the manner previously agreed upon and were unjustly enriched by his work. The special master did not — and would not have had jurisdiction to — address this non-title related claim. See *Boyd v. JohnGalt Holdings*, 294 Ga. 640, 643 (2) (755 SE2d 675) (2014) (special master's jurisdiction limited to quiet title claim); OCGA §§ 23-3-43, 23-3-66. We fail to see, therefore, how the trial court's order adopting the special master's report renders the fraud claim moot. See, e.g., *Pakwood Indus. v. John Galt Assoc.*, 219 Ga. App. 527, 530 (3) (466 SE2d 226) (1995) (a claim that has already been decided adversely to a claimant is moot).

8

Similarly, the special master did not address Davidson's request that the trial court "enforce the agreement of the parties" that the Snellville property would be transferred to him as payment for his work with Lindfield. We recognize that the special master found no evidence of an enforceable agreement permitting Davidson to convey the Snellville property to himself in 2016. But that finding does not resolve whether he had an enforceable agreement with his employer relating to compensation. And the determination that title to the Snellville property currently rests with Lindfield does not moot this claim. See *Pakwood Indus.*, supra.

Although the special master properly addressed the 2016 deed and current title to the Snellville property, he did not — and could not — consider Davidson's claims relating to compensation for work performed and allegedly fraudulent behavior. Accordingly, the trial court erred in dismissing these claims as moot.[1]

5. Finally, Davidson argues that the trial court erred in finding that he did not have a right to trial by jury in this matter. We disagree with respect to the quiet title action. Once Lindfield requested that a special master hear its quiet title claim under OCGA § 23-3-40 et seq., the trial court was required to submit the claim to a special

---

[1] We express no opinion on the legal viability of these claims. We merely find that they are not moot.

9

master. See OCGA § 23-3-43. Moreover, the legislature has explicitly declared that no right to jury trial exists in a conventional quiet title action such as that brought by Lindfield.[2] See OCGA § 23-3-43; *Gurley v. East Atlanta Land Co.*, 276 Ga. 749, 750 (1) (583 SE2d 866) (2003) ("[T]he legislature has, as in other equity cases, precluded the right to jury trial in conventional quia timet actions under O.C.G.A. § 23-3-40 et seq.").

As discussed in Division 4, however, several of Davidson's counter and third-party claims fell outside of the special master's jurisdiction and remain for resolution on remand. The jury trial restrictions in OCGA § 23-3-40 et seq. do not apply to those non-quiet title claims. The trial court erred in finding otherwise.

*Judgment affirmed in part and reversed in part, and case remanded. Dillard, P. J., and Colvin, J., concur.*

---

[2] Davidson originally filed this appeal with the Supreme Court, which transferred the case to us. In its transfer order, the Supreme Court noted that Davidson had not raised a timely constitutional challenge to OCGA § 23-3-40 et seq. He thus failed to preserve any claim that the statutory provisions precluding a jury trial in a conventional quiet title action are unconstitutional. See *Allison v. Fulton-DeKalb Hosp. Auth.*, 245 Ga. 445, 446-447 (1) (265 SE2d 575) (1980) (refusing to address constitutional challenge that was not timely raised).